# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

ALLEN R. TEMPLE,

              Petitioner,     :     Case No. 3:14-cv-050

    - vs -                             District Judge Thomas M. Rose
                                       Magistrate Judge Michael R. Merz

RHONDA RICHARDS, Warden,
  Madison Correctional Institution,

                                    :

              Respondent.

# REPORT AND RECOMMENDATIONS

Petitioner Allen R. Temple brought this habeas corpus action *pro se* pursuant to 28 U.S.C. § 2254 to obtain relief from his conviction in the Clark County Common Pleas Court on three counts of gross sexual imposition and one count of unlawful sexual conduct with a minor (Petition, Doc. No. 2, PageID 23.) Temple pled guilty to those charges, but appealed to the Second District Court of Appeals which affirmed his conviction and sentence. *State v. Temple*, 2013-Ohio-3843, 2013 Ohio App LEXIS 4007 (2nd Dist. Sept. 6, 2013). The Ohio Supreme Court declined to exercise jurisdiction over a subsequent appeal. *State v. Temple,* 2014-Ohio-176, 2014 Ohio LEXIS 106 (Jan. 2, 2014).

Temple filed his Petition in this Court on February 14, 2014 (Doc. No. 2). On the Court's Order (Doc. No. 3), Respondent filed a Return of Writ and the state court record (Doc. Nos. 5, 6, and 7). In the Order for Answer, the Court set a date for Temple to file a reply to the Return not later than twenty-one days after it was filed (Doc. No. 3, PageID 42). That time has expired, but Temple has filed no reply.

1

Temple pleads the following three grounds for relief:

> **Ground One:** The defendant was denied the effective assistance of counsel as guaranteed by the Sixth Amendment.
>
> **Supporting Facts:** Trial counsel provided ineffective assistance because there were sufficient indications to require the issue of mental competency to be raised.
>
> Indications of defendant's severe mental illness included the following. The defendant was arrested in a hospital where he was under psychiatric care after overdosing on legally obtained muscle relaxers. Following arrest, the defendant was segregated in the county jail and administered psychotropic medications under psychiatric care. Two days after sentencing, the defendant was remanded to the Ohio Department of Rehabilitation and Corrections, DRC. The DRC immediately categorized the defendant as severely mentally ill based on medical records of defendant's psychiatric treatment in the county jail.
>
> The DRC transferred the defendant from the county jail to the mental health unit at the Corrections Reception Center, CRC, for psychiatric care. After several months, the DRC transferred the defendant to the Residential Treatment Unit, R'IU, at Chillicothe Correctional Institute for continued psychiatric care. Psychiatric care of the defendant continued in general population at Madison Correctional Institution. The defendant was severely mentally ill during the criminal disposition proceedings by the the [sic] State of Ohio's determination two days after sentencing. The defendant did not "catch" mental illness two days after sentencing. The state's determination of severe mental illness was based solely on medical records of defendant's psychiatric treatment in the county jail before the defendant was remanded to custody of the DRC. Trial counsel failed to introduce the medical records of the defendant's pyschiatric [sic] care in the county jail into the court record. Additionally, during the criminal disposition proceedings, the defendant repeatedly told trial counsel that he was confused, that he was taking psychotropic medications and that he had a history of traumatic brain injuries requiring medical treatment. other indications to trial counsel of defendant's severe mental illness included defendant's confusion, demeanor, erratic behavior, short term memory loss and inability to understand and follow simple instructions. Even lay person, such as the arresting officers, could tell that the defendant was severely mentally ill. That's why the defendant was immediately segregated and placed under psychiatric care in the county jail following the arrest.

Trial counsel provided ineffective assistance by failing in a duty to investigate the defendant's psychiatric treatment and history of brain injuries. Trial counsel provided ineffective assistance by failing to :raise the issues of mental competency to enter a plea, mental illness as a mitigating factor and whether the defendant knew the wrongfulness of the criminal acts at the time of the crimes. Trial counsel provided ineffective assistance despite knowledge of the defendant's inability to understand the proceedings and assist in his own defense. Instead of insuring the defendant understood the proceedings, trial counsel rehearsed the defendant to answer sentencing colloquy questions including telling the defendant to state he was not under the influence of any medications. Trial counsel knew the defendant was confused due to the influence of the psychotropic medications because the defendant told counsel the meds were causing him to be confused.

Trial counsel not only failed by omissions, but actually acted against the best interests of the defendant in several ways. Trial counsel argued against consideration of vigilante crimes against the defendant as a mitigating factor. Trial counsel refused to file a notice of appeal as directed by the defendant even though the defendant was entitled to a direct appeal of right after receiving consecutive maximum sentences.

Trial counsel prejudiced the defense by creating evidentiary insufficiency. Had trial counsel introduced the issue of competency and medical records of pyschiatric [sic] treatment, the court would have been required by Ohio law to determine mental competency to enter a plea and to understand the wrongfulness of the criminal acts at the time of the crimes. These determinations are in the public interest. The names of too many towns and cities like Tucson, Aurora and New Town are synonymous [sic] with the commission of horrible crimes by severely mentally ill persons before they receive psychiatric treatment. Prisons and jails are overburdened with mentally ill inmates who would have been committed to state hospitals before they committed crime prior to the 1960's when mental health care was deinstitutionalized.

The defendant in the instant matter was convicted and sentenced by the consensus judgment of the prosecutor, judge and his own trial counsel based solely on their interpretation of the nature of the criminal acts. The plea bargain process which convicted the defendant abrogated his constitutional right to trial by a jury of peers. There was no adversarial legal process. The defendant did not receive effective assistance of counsel during the plea bargain

process or during sentencing. The constitutional rights of every defendant must be protected despite the nature of the criminal acts.

**Ground Two:** The defendant was denied due process as guarantee by the Fourteenth Amendment.

**Supporting Facts:** The Supreme Court of the United States, SCOTUS, has held failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent denies due process.

Competency is governed by statute in Ohio. The issue of competency may be raised by the court, persecutor or defense. Sufficient indications of defendant's severe mental illness existed and were obvious even to arresting officers to obligate defense counsel to a duty to investigate and raise the issues of competency to enter a plea and competency to understand right from wrong at the time of the crimes. Additionally, sufficient indications existed to require the court and prosecutor to raise the issues sua sponte.

Ohio trial courts are required to consider mitigating factors in sentencing by statute. The court did not consider defendant's severe mental illness as mitigation because defense counsel never raised the issue. The commission of vigilante crimes against the defendant by the victim and victim's father were not considered as mitigation even though the issue was raised. During sentencing, defense counsel argued against the interests of the defendant that the vigilante crimes had no bearing. Courts have discretion to impose lesser sentences and employ downward departures in sentencing when offenders have suffered harm unrelated to present matters. The court employed a downward departure for the victim's father by dismissing first degree felony arson charges after the father burned defendant's house down. Defense counsel argued against the defendant's interest by stating during sentencing defendant's home wasn't worth much anyway.

The defendant could not understand the proceedings due to severe mental illness and gross ambiguity between the oral pronouncement and journal entry of sentence. The oral pronouncement of sentence was:

> It is the order of the court as to counts one, two, three and four, each being a felony of the third degree , the Defendant be sentenced to five years in the state penitentiary at an institution to be determined by the

> Department of Rehabilitation and Corrections. (Tr. II pg 10).

In this universe, five years in the state penitentiary for one, two, three and four, means five years in prison and not twenty as journalized. Ambiguous language in an oral pronouncement of sentence different than journal entries must be construed in a defendant's favor.

Since the issue of competency was not raised in trial court, competency was subject to de novo appellate review. The state appellate court ignored defendant's motion to enlarge the record with psychiatric and other medical records for an evidentiary determination of competency. The appellate court denied defendant's appeal without a hearing of facts, thereby denying appellate due process.

Defense counsel ignored defendant's instructions to appeal the sentence, even though defendant was entitled to direct appeal of right for maximum consecutive sentences, thereby denying due process.

**Ground Three:** The defendant was denied equal protection under the law as guaranteed by the Fourteenth Amendment.

**Supporting Facts**: The trial court treated the defendant much differently than the victim and victim's father were treated for their vigilante crimes against the defendant due to the nature of the defendant's criminal acts against the victim.

Every defendant is entitled to equal protection under the law regardless of the nature of criminal acts the defendant commits.

In Clark County Ohio and Ohio's Second Appellate District a proper remedy for the victim of a pedophile is to burglarize a defendant's house and burn it down without fear of recourse of law for felony crimes.

The victim was never indicted. The father was indicted for burglary and arson, a felony of higher degree than the defendant 's charges. The arson charges against the father were dismissed. Why? Because of the nature of the defendant's crimes against the victim. The Second Appellate Court made it clear that the court found the nature of the defendant's criminal acts disturbing while finding defendant's demands for constitutional rights wholly frivolous. If Defendant's demands for constitutional rights are

> wholly frivolous, then so is the rule of constitutional law in Ohio. Let's just revert to the law of the jungle. Burglarize and burn down every pedophile's home. Lynchin's too good for them.
>
> Meanwhile, severely mentally ill persons like the defendant, remain untreated unless they commit horrible crimes. Ohio, what a state of affairs.

(Petition, Doc. No. 2, PageID 24-30.)

**Ground One: Ineffective Assistance of Trial Counsel**

In his First Ground for Relief, Temple asserts his attorney provided ineffective assistance by not raising the question of his mental competency to stand trial. He also claims counsel was ineffective by arguing that the "vigilante' crimes committed against Temple by the victim's father should not be considered in mitigation and failing to file a notice of appeal when requested to do so.

Respondent notes that this claim was raised on direct appeal and decided against Temple by the Second District Court of Appeals. That court held:

> **[*P31]** In this case, Temple contends that the performance of his trial counsel was deficient, because counsel failed to inform the court that he suffered from a mental illness. Temple's PSI report does not indicate that he suffers from mental illness or that he has a history of mental illness. Additionally, Temple was given the opportunity to address the trial court at his sentencing hearing, and he did not mention being mentally ill. Furthermore, his behavior at court and his responses to the court's questions at the plea and sentencing hearings were appropriate and did not indicate that he was mentally ill. There is absolutely nothing in the record establishing or even suggesting that Temple suffers from a mental illness. Because there is no evidence of mental illness on the record, Temple's trial counsel was not ineffective in failing to raise the issue before the trial court.

*State v. Temple, supra.*

In the Petition, Temple makes many factual assertions about his alleged mental illness, about his treatment for it since his incarceration, and his treatment before he was arrested. In the Return of Writ, however, the Warden notes that Temple has never presented "a scintilla of evidence" to support these claims, either in the state courts or here. Confronted with this direct challenge to his claims, Temple failed to file any reply/traverse at all, much less one with any evidence of mental illness.

Temple cannot repair this failure by now tendering evidence of the mental illness treatment he claims because he did not tender to the state courts. As the court of appeals found, there was nothing in the direct appeal record to support this claim. Under *Cullen v. Pinholster,* 563 U.S. ___, 131 S.Ct. 1388 (2011), a federal habeas court cannot consider evidence beyond the state court record to determine if the state court decision was objectively reasonable.

Temple adverts to additional evidence which was not in the record and claims he made his attorney aware of at least some of it. Under those circumstances, he could have raised a claim of ineffective assistance of trial counsel based on evidence outside the record in a petition for post-conviction relief under Ohio Revised Code § 2953.21, but he never filed such a petition and the time within which he could have done so has expired.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

In this case the state court of appeals determined that Temple's trial attorney did not render ineffective assistance and Temple has not shown that decision is contrary to or an objectively unreasonable application of the governing standard for ineffective assistance of trial counsel found in *and v. Washington*, 466 U.S. 668 (1984). The First Ground for Relief should therefore be dismissed.

**Ground Two: Denial of Due Process**

In his Second Ground for Relief, Temple asserts his right to due process of law under the Fourteenth Amendment was violated by his conviction in various ways.

In part he again argues his trial attorney provided ineffective assistance. Those claims are dealt with above under the First Ground for Relief.

In part he claims he was entitled to de novo appellate consideration of the evidence of his mental illness which he did not receive. However, intermediate appellate courts in Ohio do not conduct de novo evidentiary proceedings on appeal from a criminal judgment. As noted above with respect to the First Ground for Relief, the proper way to add new evidence to the record is by a petition for post-conviction relief, which Temple never filed. There is no due process right to have a state intermediate court of appeals hear new evidence.

Temple also claims that his mental illness was so obvious that the trial court was obliged to consider it *sua sponte*, without waiting for any motion from his attorney. "[W]here there is substantial evidence of a defendant's incompetence at the time of trial, a trial judge has the duty to order a hearing *sua sponte*." *Stewart v. Morgan,* 232 Fed. Appx. 482; 2007 U.S. App. LEXIS 11804 (6th Cir. 2007), *quoting Pate v. Smith*, 637 F.2d 1068 (6th Cir. 1981). But the court of

appeals found, as quoted above, that there was no such evidence and Temple has offered nothing to rebut the presumption of correctness which attaches to that finding.

Temple contends he was denied due process when the sentencing judge did not consider in mitigation the crimes committed against him by the victim's father. The Second District decided this claim as follows:

> **[\*P35]** Temple also argues that the trial court was required to consider the crimes committed against him by the victim's father as a mitigating factor. We fail to see how the criminal acts of J.B.'s father mitigates Temple's repeated acts of sexual abuse on J.B. The fact that the father committed crimes against Temple's property does not render Temple's offenses any less serious. Furthermore, the father's criminal actions took place after Temple was incarcerated and are, therefore, irrelevant. Accordingly, the father's crimes are not mitigating factors to be considered under R.C. 2929.12(C)(4).

*State v. Temple, supra.* In deciding this claim, the Second District was interpreting Ohio Revised Code § 2929.12. Its interpretation of what the Ohio Revised Code requires a sentencing court to consider in mitigation is binding on this Court. To put it another way, federal habeas corpus relief can only be granted for violations of the United States Constitution and the Constitution does not require any consideration in sentencing be given to a defendant who has himself been victimized by his own victim's family after he committed the crimes of which he has been convicted.

Temple complains that the trial court's judgment does not match its oral pronouncement of sentence. While Temple accurately quotes the transcript of the sentencing hearing in his Petition, the language used is consistent with imposition of a five year sentence on each of the four counts of conviction. The court of appeals decided this question on direct appeal as follows:

> **[\*P43]** Temple contends that the trial court's oral pronouncement of his sentence was ambiguous because the court did not directly

state that he was sentenced to a total of 20 years in prison. He argues that the court's statements led him to believe that he was sentenced to only five years.

**[*P44]** "'[A] defendant [is] entitled to have ambiguous language construed in his favor, *if the court's oral pronouncement of the sentence differed from the journal entry*.'" (Emphasis added.) *State v. Marbury*, 10th Dist. Franklin No. 03AP-233, 2004 Ohio 3373, ¶ 67, quoting *State v. Nye*, 10th Dist. Franklin No. 95APA11-1490, 1996 Ohio App. LEXIS 2314, 1996 WL 303675, * 2 (June 4, 1996); *Gaddis v. United States*, 280 F.2d 334, 336 (6th Cir.1960). (Other citation omitted.) If there are no inconsistencies between the written journal entry and what the judge stated at sentencing, the requisite ambiguity does not exist. *See, e.g., State v. Sheffey*, 8th Dist. Cuyahoga No. 98944, 2013-Ohio-2463, ¶ 34-37.

**[*P45]** In this case, the trial court stated the following at Temple's sentencing hearing:

> It is the order of the Court as to counts one, two, three and four, each being a felony of the third degree, the Defendant be sentenced to five years to the state penitentiary at an institution to be determined by the Department of Rehabilitation Corrections.
>
> * * *
>
> [T]he five year prison sentence is to be served consecutive to each other * * *. Criminal Disposition Hearing Trans. (July 11, 2013), p. 10, ln. 4-8, 25; p. 11, ln. 1.

**[*P46]** The trial court later said, "Mr. Temple, you have been given the maximum sentence on this offense." *Id*. at p. 13, ln. 25; p. 14, ln. 1. Temple was previously informed at the plea hearing that the maximum possible sentence was 20 years. Plea Hearing Trans. (June 27, 2011), p. 7, ln. 13-17.

**[*P47]** The judgment entry of conviction, filed on July 13, 2011, clearly indicates that Temple was sentenced to 20 years. The judgment entry is consistent with the trial court's pronouncement at the sentencing hearing, because at sentencing, the trial court ordered four five-year consecutive sentences. Additionally, the trial court indicated that Temple received the maximum possible sentence, which was established as 20 years at the plea hearing.

> Because there are no inconsistencies between the trial court's oral pronouncement and the written judgment entry, the ambiguity required for Temple to prevail on his argument does not exist.

*State v. Temple, supra.* In sum, the court of appeals held the oral sentence was not inconsistent with the written judgment because Judge O'Neill had said orally that the five-year sentences on each count were to be served consecutively to one another.

Moreover, the requirement that the written judgment and the oral pronouncement must be consistent with one another is a requirement of state law. Temple cites no law and none is known to the Court which prefers an oral pronouncement to a written judgment as a matter of federal constitutional law.

Accordingly, the Second Ground for Relief should be dismissed with prejudice.

**Ground Three: Denial of Equal Protection**

In his Third Ground for Relief, Temple claims he was denied equal protection of the laws because he was sentenced to twenty years imprisonment while "[t]he victim was never indicted. The father was indicted for burglary and arson, a felony of higher degree than the defendant's charges. The arson charges against the father were dismissed. Why? Because of the nature of the defendant's crimes against the victim."

Temple never raised this claim as an equal protection claim in the state courts. Instead, he argues he was entitled to have the victim's father's crimes against him considered in mitigation. Because Temple did not fairly present a constitutional claim under the Equal Protection Clause to the state courts, he has procedurally defaulted on that claim, which should be dismissed on that basis.

Had Temple properly preserved the claim, it would be without merit.

> The Equal Protection Clause directs that "all persons similarly circumstanced shall be treated alike." *F.S. Royster Guano Co.* v. *Virginia*, 253 U.S. 412, 415 (1920). But so too, "[the] Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Tigner* v. *Texas*, 310 U.S. 141, 147 (1940). The initial discretion to determine what is "different" and what is "the same" resides in the legislatures of the States. A legislature must have substantial latitude to establish classifications that roughly approximate the nature of the problem perceived, that accommodate competing concerns both public and private, and that account for limitations on the practical ability of the State to remedy every ill. In applying the Equal Protection Clause to most forms of state action, we thus seek only the assurance that the classification at issue bears some fair relationship to a legitimate public purpose.

Plyler v. Doe, 457 U.S. 202 (1982). As Temple points out, the Ohio General Assembly has done the initial classification here of making arson of a dwelling house a more serious crime than gross sexual imposition or unlawful sexual conduct with a minor. We have, however, only Temple's allegations without proof that the charges against the victim's father were dismissed. We do not know who dismissed them, but a request by a prosecutor to dismiss criminal charges must almost always be honored by a judge. Nor do we have any proof of what the prosecutor's reasons may have been. While there was evidently enough proof to show probable cause to the grand jury, there may have been insufficient evidence to convict beyond a reasonable doubt. There is no showing in the record that the judge dismissed with charges without the prosecutor's agreement, or that the prosecutor, who would have brought the charges to the grand jury in the first place, dismissed them in order to punish Temple more for his criminal conduct.

The Third Ground for Relief should therefore be dismissed with prejudice.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous.

June 16, 2014.

s/ *Michael R. Merz*<br>United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).